NEWMAN, Circuit Judge,
dissenting.
On May 2, 2003, John Ross Juneau, an airport safety chief, while working as a part-time security guard at a department store, ran after two persons he believed had committed a crime and who were fleeing outside the store, and apprehended one of the suspects. A short time thereafter Mr. Juneau collapsed and died. Mr. Juneau’s surviving family members filed a claim pursuant to the Public Safety Officers’ Benefits Act (PSOBA), which provides for payment to beneficiaries when “a public safety officer has died as the direct and proximate result of a personal injury sustained in the line of duty.” 42 U.S.C. *784 § 3796(a). The medical examiner who performed the autopsy stated that the “immediate precipitating factor contributing to the cause of death was the chase and surrounding events on May 2, 2003.” Mr. Juneau’s family physician stated that “John Ross Juneau died as a result of trauma, specifically the trauma to his body caused by the chase and apprehension of the shoplifting suspect in the minutes before his collapse on May 2, 2003.”
A Hearing Officer for the Bureau of Justice Assistance (BJA), Dr. Voncile B. Gowdy, heard live testimony at a hearing and then requested further documentary evidence, including an independent medical evaluation by two physicians from the Armed Forces Institute of Pathology. Dr. Gowdy considered all of the facts and circumstances of Mr. Juneau’s death and concluded that the requirements of the statute were met. Dr. Gowdy remarked that there were discrepancies between the medical evaluation he had ordered (which was based solely on documentation of Mr. Juneau’s death) and the medical opinions of the coroner and Mr. Juneau’s family physician (who had personally observed Mr. Juneau’s body). The Hearing Officer applied the BJA’s “reasonable doubt” regulation then in effect, to resolve the issue in favor of the claimants. See 28 C.F.R. § 32.4 (2004) (“The Bureau shall resolve any reasonable doubt arising from the circumstances of the officer’s death or permanent and total disability in favor of payment of the death or disability benefit.”).[1] The Hearing Officer concluded that “the physical nature of the lengthy chase, coupled with the condition of the weather that was present that day, as well as the energy exerted while chasing the suspect on May 2, 2003 were substantial factors contributing to John Ross Juneau’s death.”
The Director of the BJA, reversing the decision of the Hearing Officer, determined that Officer Juneau had suffered no injury, despite his death from heart failure that all agree was caused by his strenuous pursuit and apprehension of an apparent criminal. This is an implausible conclusion, and is not reconcilable with the purpose of the PSOBA. See Demutiis v. United States, 48 Fed.Cl. 81, 86 (2000) (“The PSOBA is likewise remedial in nature and thus should not be applied grudgingly, but rather should be construed liberally to avoid frustration of its beneficial legislative purpose.”); see also Baltimore & Phila. Steamboat Co. v. Norton, 284 U.S. 408, 414, 52 S.Ct. 187, 76 L.Ed. 366 (1932) (laws designed to compensate employees for “personal injuries and deaths occurring in the course of their work” are “deemed to be in the public interest and should be construed liberally in furtherance of the purpose for which they were enacted and, if possible, so as to avoid incongruous or harsh results”).
The Department of Justice does not dispute that Mr. Juneau was acting “in the line of duty,” as required for benefits under the PSOBA. See 42 U.S.C. § 3796(a). It is also not disputed that Mr. Juneau’s act of running down and apprehending a person he believed had committed a crime was the direct and proximate cause of his death; that is, Mr. Juneau died from the physical trauma induced by the encounter. The Director of the BJA nonetheless found that Mr. Juneau had not been injured in *785 the line of duty. The Director apparently ignored or discounted the medical evidence that supported the petitioners’ claim, and did not take account of the reasonable doubt regulation. This was in violation of the BJA regulations that applied to the petitioners’ claim.
The terms and purpose of the PSOBA are squarely met on the facts of this case. The public interest served by this law is not in dispute. The Director’s decision, affirmed by my colleagues on this panel, is not the appropriate application of the PSO-BA. I respectfully dissent.

. The Department of Justice argues in this appeal that a regulatory change in 2006 that removed the reasonable doubt standard had retroactive effect to the 2003 death of Mr. Juneau. That retroactivity argument has been rejected by this court and the Court of Federal Claims, which courts have applied the pre-2006 BJA regulation to claims that accrued before the regulatory change. See Amber-Messick v. United States, 483 F.3d 1316, 1325 (Fed.Cir.2007); Winuk v. United States, 77 Fed.Cl. 207, 215 (2007).